The next case this morning is 523-1029, People v. Gillum. Arguing for the appellant is Kara Kurland. Arguing for the appellee is Diane Campbell. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Each side will... Please note only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning again, Ms. Campbell. Morning. Ms. Campbell, can you say something? Because I lost your audio. Okay, we can hear you. Before we begin, I wanted to indicate that we do have a 3rd panel member assigned to this case. It is Justice Welch. He's not with us this morning. But there is an audio recording being made of this case so that it is available to him to listen to when he is able to get to this case. So, with that said, Ms. Kurland, for the defendant, you may proceed when ready. Good morning, Your Honors. My name is Kara Kurland on behalf of the appellant, Mr. Cortez Gillum. May it please the court. Mr. Gillum alleged in his post-conviction petition that his trial counsel was aware of multiple pieces of evidence that would assist in his defense, but that were not introduced at trial. This evidence included 4 eyewitnesses whose affidavits corroborate Gillum's claims that he reasonably feared for his life and shot Mr. Baxton in self-defense. These claims, if true, make a substantial showing that Gillum's counsel was ineffective. In other words, Mr. Gillum's petition satisfies the second stage requirements of the Post-Conviction Act, and in accordance with this law, he should be given an evidentiary hearing. In fact, the state's brief confirms the need for an evidentiary hearing as it questions the credibility of Gillum's substantial showing claims more than 20 times. But the only way to make these credibility and factual determinations, as the state repeatedly did in its brief, is to put witnesses on the stand at a third stage evidentiary hearing. Mr. Gillum also raises numerous meritorious claims that his post-conviction counsel was unreasonable. For the sake of time, I'm going to address the substantial showing claim regarding the 4 eyewitnesses and the unreasonable assistance claim regarding forfeiture of the sentencing claim. These claims alone necessitate remand for new post-conviction counsel and new second stage proceedings, as well as a third stage evidentiary hearing. If this court has any questions about the other arguments, I am happy to take those as well. But to begin with the 4 eyewitnesses, Mr. Gillum attached to his post-conviction petition 4 affidavits from individuals that were eyewitnesses to the shooting and corroborated Gillum's self-defense claims. Gillum alleged that trial counsel had this information prior to trial, but counsel failed to investigate and call these witnesses. These affidavits support the most important and most contested fact at trial, that Baxton threatened Gillum and that Gillum feared for his life. At trial, Gillum testified that Baxton initiated the altercation, hit him with a gun, and told Gillum he was going to kill him. Gillum and Baxton both testified that there were people present that witnessed the altercation. But despite the presence of these witnesses, Mr. Gillum's defense was uncorroborated. No witnesses testified on his behalf. The state agrees that the affidavits support Gillum's self-defense claim, but quote, raise significant questions about witness credibility and bias. This is a concession that an evidentiary hearing is necessary in order to assess the credibility and biases of these witnesses. The state has also conceded that at least one of the four witnesses, Roderick Lewis, was present during the shooting. And the state has also conceded that trial counsel knew about all of these witnesses prior to trial. So in other words, the state has conceded every relevant part of this claim that requires Gillum to receive an evidentiary hearing. Instead, the state argues that trial counsel's failure to investigate and call corroborating witnesses was reasonable trial strategy. But the law here is clear. Counsel cannot make a strategic choice to fail to introduce evidence that corroborates an otherwise uncorroborated defense. The state attempts to argue that the surveillance video was considered corroborating evidence. But the video was not used as corroborating evidence. It was never played during Gillum's testimony, and he wasn't questioned about it. And in fact, in closing, defense counsel emphasized that you don't really know what's going on in the video because there is no audio. He says that if there were audio, you would hear Baxton telling Gillum that he was going to kill him. But with no audio, the video cannot corroborate that claim. But all of the affidavits from the witnesses say that they heard Baxton telling Gillum that he was going to kill him. These witnesses were the only people that could corroborate those claims. Gillum thus made a substantial showing that counsel was ineffective for failing to investigate and call these witnesses that would have corroborated Gillum's self-defense claim. So in order to assess all of the credibility and factual questions that the state has about these witnesses and the information in their affidavits, an evidentiary hearing is required. Now moving on to the unreasonable assistance claims regarding the sentencing claim. So Mr. Gillum's sentencing claim is a straightforward application of Rule 651C and the Illinois Supreme Court decision in People v. Addison. Post-conviction counsel had a responsibility to make any amendments to Gillum's pro se petition that were necessary for an adequate presentation of his claims. This includes making necessary amendments to overcome procedural bars. One of Gillum's pro se claims was that his trial counsel was ineffective for failing to offer critical mitigation evidence at sentencing. This mitigating information included that Gillum was previously diagnosed with paranoid schizophrenia and bipolar disorder, had a history of substance abuse, suffered physical abuse, and attempted suicide at the St. Clair County Jail. But because this information was available in Gillum's PSI and the appellate record, Gillum waived this claim when his appellate counsel did not bring it on direct appeal. So to overcome this procedural bar, Addison mandates that PC counsel should have argued that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to argue this mitigating evidence. But because post-conviction counsel failed to present Gillum's sentencing claim in this appropriate legal form, his assistance was unreasonable. Thus, remand for second stage proceedings is necessary. The state responds to this claim by arguing the merits of the sentencing claim. But when post-conviction counsel fails to overcome a procedural bar, his assistance is unreasonable regardless of the merits of the underlying claim. Addison makes this incredibly clear. So to conclude, because Gillum made a substantial showing of ineffective assistance of counsel for failing to investigate corroborating witnesses, and because his post-conviction counsel was unreasonable for failing to overcome a procedural bar relating to Gillum's sentencing claim, this court should remand for new second stage proceedings and also find that Gillum is entitled to an evidentiary hearing on this ineffective assistance of counsel claim. Thank you. I don't understand, Ms. Kerland, how we do both. Yes, Your Honor. So the first step would be if you find any of the unreasonable assistance claims meritorious, then the whole petition would move back on remand to new second stage proceedings where Gillum would be appointed a new attorney. At that point, he would be able to amend the petition in any way he'd see fit. So that a court could again hear the second stage petition. And depending on what happens there, we would know at the very least that two of the claims would move on to the third stage evidentiary hearing. So on remand, he wouldn't really need to touch the substantial showing claims if this court agrees that there was a substantial showing regarding those two claims. A substantial showing regarding what two claims? The ineffective assistance of counsel claims that I raised in my direct appeal. So, yes, if the court finds those claims meritorious, as well as any of the unreasonable assistance claims, the first step is to go back for new second stage proceedings. And then at any point, no matter what happens in those proceedings, we know that a third stage evidentiary hearing will happen at least regarding the two substantial showing claims. Can you reverse and remand for a third stage evidentiary hearing with leave to amend the post-conviction petition? I don't believe so, Your Honor. I think the proper step would be first to remand for the new second stage proceedings because counsel would be unreasonable and therefore Gillum would be entitled to a new post-conviction counsel first to amend any of those other claims. And your argument about second stage is that appellate counsel was ineffective for failing to allege that trial counsel was ineffective? Yes, so post-conviction counsel should have alleged in the petition that appellate counsel was ineffective for failing to argue, yes, that trial counsel was ineffective for not arguing the sentencing claim. That would be the only way to overcome the procedural bar. But post-conviction counsel did not do that. And Addison makes very clear that that is unreasonable assistance of counsel. And you say Addison, that's people versus Addison? Yes, I think it's a 2023 Illinois Supreme Court case. Okay. All right, Justice Moore, any questions? No questions. Okay, Ms. Kerland, you will have time in rebuttal after Ms. Campbell. Ms. Campbell, on behalf of the state. Good morning again, Your Honors. I'm going to go through a few basics and then I will particularly touch on the sentencing issue, which was not forfeited in any manner because the trial court or the PC court actually made a determination. There was no forfeiture of that. His counsel was not ineffective because he got a hearing on that claim. Second stage dismissal of a PC. Here the counsel filed a 651C certificate that installs a rebuttal presumption that counsel reasonably performed his duties. There's only substantial compliance, not strict compliance. And reasonable assistance of counsel in PC is a less rigorous standard than that of assistance of counsel at trial. It is conducted under Strickland, which requires both deficient performance and prejudice. The only challenge here is really to the sufficiency of the claims. There's no argument that he didn't consult or either the client or the record. The defendant complains that his PC counsel was ineffective for not attaching an affidavit by the defendant to the petition that contained specific factual allegations or indicates how his claims were capable of independent corroboration. That is rebutted by the record. At the defendant's verification at the end of the post-conviction petition, which is at C805, defendant appears under penalty of law that he signed the petition, understood its contents, and swore the information contained therein was true and correct to the best of his knowledge and belief. PC counsel attached a great number of documents. And then he, within each particular contention, he stated which of the exhibits would support that particular contention. For example, the four affidavit witnesses, their affidavits were attached as they refer to as exhibits E1 to 4. For preparedness for trial, he attached a trial, a transcript of the trial status hearing exhibit Q. For the sentencing, the amended petition includes statements of the defendant's personal claims regarding his dramatic background to support his sentencing arguments. So this detailed presentation with targeted references to the documents support the specific factual allegations and indicate how defendant's claims were allegedly capable of independent corroboration. Again, only substantial, not strict compliance is required. That occurred here. People are not asking this court to judge the credibility of the witnesses. This court cannot do that at second stage. Counsel is correct about that. What this court does is determine if the allegations are well pled, supported by the documents, and most critically in this case, not affirmatively rebutted by the record. Here they are rebutted by the record. Most importantly, the video of the shooting. I'm sure your honors have already looked at it. I encourage you to look at it again. What about it do you want us to look at? I'm going to point out some particular contradictions between the affidavits and what is visibly occurring on the video of the shooting. That contradicts their statements. The video is from behind the scene where the shooting occurred. It provides an unobstructed view of the apartment building across the street, which the affidavits establish as Building 23. It shows the parking lot in front of the building with several cars, and Louis by his car on the far right with the open trunk. The affidavits state that the defendant was talking to, this is during the encounter with the police officer, the defendant was talking to people, plural, across the street at Building 23. There are no people at or near Building 23, except Louis on the far right in the parking lot. In its brief, the people note the times when people emerged from Building 23, which is well after Officer Braxton is down, the defendant has fled. The non-existent people are not ducking to take cover behind cars, only Louis is. They state defendant had both hands up, defendant does not have both hands up, and he's carrying a white bag, which he places on the trunk, or on the car hood, and defendant testified to that also. They said that Officer Braxton stopped to yell at them, to mind their own business, or he would put a case on them. While there is no audio, in the video, Braxton and defendant are interacting with each other, and Braxton does not stop to stop or engage in dialogue with anyone except the defendant, particularly not the rather extended conversation, which the fiance talked about. The video itself is only 40 minutes, and the defendant's and Baxter's tussle is significantly less than that. I provide further contradictions. The exhibit that I saw where Officer Braxton drives up very aggressively, the entire encounter is less than 10 seconds. Yes. And there's no audio. Yes. The officer drives up very quickly. He does drive up quickly, but part of that is they have been searching for this particular defendant. They got the tip that he was at this apartment complex. Both he and another officer are touring around looking for him. He has just made a U-turn to come back. I don't think it's aggressively. He's trying to quickly respond and then question the defendant. Is this, in fact, the person that they got the photo of in their morning communication? He doesn't take much time to identify the defendant. I mean, he immediately, according to the video, he's got his hooded sweatshirt on with his white bag, and the officer drives up very quickly and the encounter begins. The officer does not have his gun out when the encounter begins. Well, we don't know that. It's very difficult to see, at least my view, whether there's a gun out. I disagree with that. I did not see one myself. Anyways, as you pointed out, the actual encounter between them is very short. So, again, the defendant doesn't have his hands up, as the witnesses are saying. He is not pausing to yell at or talk to the people who are visibly not across the street in front of Building 23. Their statements in their affidavits are contrary to the record. Well, shouldn't he have had the ability to put those people on the witness stand and have their credibility determined by the video? Because the video is only one. I mean, there's space to the right and left that we don't see. We only see the gentleman with the trunk, the car. But the affidavit witnesses are saying they're at Building 23. They're not saying they're behind the defendant where the camera view is coming from. They say they are at Building 23 and there's nobody there. But that's one piece. I mean, the repeated theme of this affidavit is that there was yelling going on and the officer was yelling at the defendant. But what was most telling to me about this entire situation is the judge gave a self-defense instruction. Why would the court do that? Because that was defendant's whole argument. But it is trial counsel who is in the moment who is determining what evidence to present. My opposing counsel said that, you know, I'm sorry, there's nothing in the briefs to indicate when exactly he knew about it. There's indication, or sorry, trial counsel knew about the affidavit. But clearly, you know, he has watched the video. In this case, I talk extensively about how much interaction the defendant and his trial counsel had in this. And in fact, defense counsel had an hour and 75 minutes with him about the contentions. He spent then two hours and 25 minutes or two and a quarter hours revising it. And then he sent defendant a letter saying, you know, I'm deleting one particular allegation. We don't know which particular allegation that was. But clearly, this trial counsel is doing a at least reasonable job to adequately present the defendant's contentions. And he has assessed the entire record. And, you know, many of these are, in fact, they would be trial counsel determinations on what evidence to present. But you're also then looking at the Strickland standard, which requires both deficient performance and prejudice. And in this case, the trial counsel, you know, was determining what evidence to present. They had numerous talks about that, such as the civil lawsuit. There was a motion in limine and the court made a allegation towards it being unsubstantiated allegations and made a Martian analogy regarding reliability. So I think clearly here with the work that PC counsel and defendant did to mutually establish what they were going to argue about, the defendant got a fair and full hearing. The trial judge indicated he considered both trial errors and the sentencing errors. And he dismissed the petition at the second stage. At worst, if you don't agree with that, it should go back for further second stage. I don't think there's any basis for putting this at an evidentiary hearing. And I don't really know what any counsel could have, any PC counsel could have done, you know, more effectively for this defendant than he did with this post-conviction petition. He was very thorough. Defendant was an integral part on presenting it. He personally got to speak to the trial court after the hearing had ended. It reconvened because the defendant wanted to talk to the trial court in particular about something his counsel had said about his interactions with his trial counsel. The trial court and the defendant engaged in that discussion. They talked about the civil suits. They talked about the sentencing issues. At the end of that discussion, the trial or the PC court asked the defendant if there was anything further. And he said, no, ma'am. This defendant got a full and fair presentation of the claims that he wanted in the petition. And this court should affirm the trial court's dismissal. I'm well over time. So do you have any more questions? Justice Moore? No questions. Okay, thank you, Ms. Campbell. Ms. Kerland? Yes, thank you. I just have a few brief points. So I do want to be clear about what this video shows. Clearly, Justice Cates, you have watched it. But the state paints a picture of this altercation taking place in front of one isolated building. But that's not what is going on here. This altercation took place in the parking lot of a housing project, a parking lot that is surrounded by numerous buildings and numerous people. And the state, well, the court admitted exhibits, People's Exhibits 5 through 11, 15, and 17 are all pictures. It's basically a 360 view of the parking lot. So you can see that this parking lot is surrounded by buildings and that the building 23 that you see on the video, it's a corner of it. And that building is like about eight times the size of that corner that you see in the video. So Baxton even testifies that when he gets into the parking lot, he pulls in and he sees people walking and standing around. Gillum testifies that there were people across the street at another building. And I do want to clarify that. So in the affidavits, Roderick Lewis and Hermaine Moore, they testify they're in front of building 23. But Governor Quinn in the affidavit says that he's in front of building 17. So the state is saying there's only one building. They're all saying they're only in front of one building. There is at least one affidavit saying, no, I'm in front of building 17. And the state has conceded that all you see is that corner of building 23. So Justice Cates, as you mentioned, there is a lot more going on that you do not see in this video, which is why it is so critical that we move this claim onto an evidentiary hearing so that we have a much fuller picture of what is going on in this scene. So that is what I wanted to address about affidavits. I also just, I want to point out that the state is absolutely making credibility determinations in their brief. I counted, it was over 20 times. And specifically on page 30 of their brief, they say that the presentation of the four witnesses who all happened to be on the scene at an apartment complex at the same time that were all conveniently present in the jail while defendant was in custody strains the statistical bounds of credibility. That very well may be so, but that is exactly what an evidentiary hearing is for, which is why this claim was moved onto that evidentiary hearing. And then lastly, I do just want to briefly address Addison one more time because the states in the beginning of their argument briefly made a point that the sentencing claim wasn't forfeited because the trial court heard the merits of it, but that was exactly what happened in Addison. And in Addison, the court still found that it was unreasonable because it is inappropriate to consider the merits of the claims in the petition when counsel has not complied with Rule 651C by shaping it into the appropriate legal form. That is a direct quote from Addison. So the fact that the trial court here may have heard or considered the sentencing claim does not change the fact that counsel was unreasonable for failing to amend it to overcome that procedural bar. Thank you. Does that conclude your argument, Ms. Merlin? Yes, it does. Thank you. Okay, thank you both for your arguments here today. Justice Moore, any questions? No questions. Okay, this matter will be taken under advisement and we will issue an order in due course.